# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAWN M. KAY-WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-cv-0211-MJR |
| | ) |
| MINNESOTA LIFE INS. CO., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

REAGAN, District Judge:

### A. Introduction

Removed from the Circuit Court of Madison County, Illinois, this lawsuit challenges Minnesota Life Insurance Company (MLIC)'s refusal to pay accidental death benefits after Brian Woods died in a single-vehicle accident. Brian's widow, Dawn Kay-Woods (Plaintiff), maintains that MLIC improperly refused to pay benefits under an insurance policy that provided "payoff" coverage on the Woods' home mortgage loan, the amount of which was $61,887.00 when Brian died. Plaintiff's August 2008 amended complaint alleges that MLIC's actions constitute breach of contract and vexatious/unreasonable refusal to settle under Illinois law (215 ILCS § 5/155).

In previous Orders, the undersigned Judge found subject matter jurisdiction to lie under the federal diversity statute (*see* Doc. 19) and dismissed Plaintiff's claim under the Illinois consumer fraud statute, because

"breach of a contractual promise, without more, is not actionable under the [Illinois] Consumer Fraud Act" (*see* Doc. 32, p. 8, **quoting Avery v. State Farm Mutual Auto Ins. Co.**, **835 N.E.2d 801, 844 (Ill. 2005)**). Now before the Court are cross-motions for summary judgment, which were fully briefed as of October 3, 2008. Analysis begins with the standards governing such motions.

B. <u>Applicable Legal Standards</u>

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. **Breneisen v. Motorola, Inc.**, **512 F.3d 972 (7th Cir. 2008)**, *citing* **Fed. R. Civ. P. 56(c)**, **Celotex Corp. v. Catrett**, **477 U.S. 317, 322-23 (1986)**, and **Krieg v. Seybold**, **481 F.3d 512, 516 (7th Cir. 2007)**. **Accord Levy v. Minnesota Life Ins. Co.**, **517 F.3d 519 (7th Cir. 2008)**.

In ruling on a summary judgment motion, this Court must view in the light most favorable to the nonmovant the evidence plus all inferences reasonably drawn from the evidence. **TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.**, **491 F.3d 625, 630 (7th Cir. 2007)**; **Reynolds v. Jamison**, **488 F.3d 756, 764 (7th Cir. 2007)**.

When cross-motions for summary judgment are filed, "we look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a

genuine issue of material fact." ***Diaz v. Prudential Ins. Co. of America***, 499 F.3d 640, 643 (7th Cir. 2007), *quoting **Santaella v. Metropolitan Life Ins. Co.***, 123 F.3d 456, 461 (7th Cir. 1997).

As the United States Court of Appeals for the Seventh Circuit stated last month:

> When, as in this case, the parties have filed cross-motions for summary judgment, "we construe the evidence and all reasonable inferences in favor of the party against whom the motions under consideration is made."

***Jefferson v. United States***, — F.3d —, 2008 WL 4490126 (7th Cir. Oct. 8, 2008), *quoting **Samuelson v. LaPorte Community School Corp.***, 526 F.3d 1046, 1051 (7th Cir. 2008). *Accord **Tate v. Long Term Disability Plan***, — F.3d —, 2008 WL 4276593 (7th Cir. Sept. 19, 2008); ***Aux-Sable Liquid Products v. Murphy***, 526 F.3d 1028, 1032 (7th Cir. 2008).

The nonmoving party cannot succeed by resting on its pleadings. Rather, the non-movant (*i.e.*, the party opposing the adverse litigant's motion) must provide evidence on which the jury or court could find in *its/his* favor. ***See Maclin v. SBC Ameritech***, 520 F.3d 781, 786 (7th Cir. 2008).

The substantive law of Illinois applies in this diversity action, and under Illinois law the interpretation of an insurance policy is a question of law properly decided via summary judgment. ***BASF AG v. Great American Assurance Co.***, 522 F.3d 813, 818-19 (7th Cir. 2008), *citing **Crum &***

***Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993).** A court's primary objective in construing the terms of an insurance policy is to give effect to the parties' intentions, as expressed by the language of the policy. **BASF, 522 F.3d at 819, *citing Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006).**[1]

    C.    <u>Analysis</u>

On May 23, 2006, MLIC issued an insurance policy to Brian Woods and Plaintiff – Contract #0390019-001101554159 ("the Policy," copy at Doc. 43). The Policy includes an accidental death and dismemberment benefit, furnishing a lump sum payment when MLIC receives "proof satisfactory to us that you died or suffered a dismemberment loss" resulting from an accidental injury. The Policy plainly provides that benefits will *not* be paid if the death or dismemberment results from or is caused directly by, inter alia, "your commission of a felony" (Doc. 43, p. 3).

On March 2, 2007, Brian Woods "was killed in a one vehicle

---

[1] In performing that task, the court must construe the policy as a whole, "taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." ***Id.*, quoting *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006).** Where the terms of an insurance policy are clear and unambiguous, they must be applied as written. Terms are ambiguous if they are reasonably susceptible to more than one interpretation, "not simply if the parties can suggest creative possibilities for their meaning." **BASF, 522 F.3d at 819.** Ambiguous terms are construed against the drafter of the policy, but a court should not search for ambiguities where none exists. ***Id.***

accident" in which a van "that he was driving … left the roadway and hit a tree" (Amended Complaint, Doc. 38, p. 3). The accident report prepared by the Illinois State Police (Doc. 31-4, pp. 11-16) states:

> Unit 1 [Brian's vehicle] was traveling northbound on Rt. 111 at Whispering Oaks Lane. Unit 1 left the roadway on the right shoulder for no apparent reason and traveled 192 feet before striking a tree.... Witness 1 stated Unit 1's brake lights were activated shortly before it struck the tree. No skid marks on roadway or grass. The driver of Unit 1 was declared dead on scene. **Unit 1 driver's license was in Revoked Status at time of crash.**

*Id.* at p. 12, emphasis added.

The Jersey County Coroner prepared a report, which included a toxicological evaluation. That evaluation revealed that, at the time of his death, Brian Woods' blood contained 0.184 gm% alcohol (ethanol) and 0.094 mg/ml cocaine (Doc. 31-4, p. 3). Under Illinois law, a blood alcohol level of 0.08% or more constitutes driving while under the influence (DUI). **625 ILCS 5-11-501(a)(1).** Furthermore, driving under the influence with a suspended or revoked driver's license for a *previous* DUI constitutes a Class 4 felony. **625 ILCS 5/11-501(d)(1)(G) and (d)(2)(A).**

Here, Plaintiff does not challenge the toxicological report and does not dispute that Brian Woods had a prior DUI conviction. Rather, Plaintiff argues that Brian "was not in commission of a felony at the time of his death" (Doc. 26, p. 1).

There is no question that Brian Woods was driving on a revoked Illinois driver's license on March 2, 2007. Plaintiff maintains, however, that the revocation stemmed from a reckless driving conviction, *not* the original DUI or any other alcohol-related offense (Doc. 41, p. 1). On the other hand, MLIC insists that Brian's *DUI* revocation was still in force when he died in 2007. So, the key question before the Court is the basis for the revocation of Brian's driver's license at the time of the fatal accident. It is on this very point that the parties' briefs (and supporting exhibits) fall short.

Plaintiff asserts that a 2003 reckless driving violation "was the basis for the extension of the revocation of drivers' license" for Brian, which was "not an alcohol related extension" and thus "not a felony as required for denial of benefits" (Doc. 41, p. 2).[2] MLIC counters that "Plaintiff is simply incorrectly reading the driving abstract," having failed to submit the *reverse* side of the abstract, which contains the legend for the action codes used by the Secretary of State's Office – codes shedding light on this Court's inquiry (Doc. 31, p. 4).

The undersigned Judge has carefully reviewed both parties' submissions. The ample record before this Court establishes the following.

---

[2] Plaintiff refers to this somewhat confusingly as a "reckless driving charge of 7/3/03" (Doc. 25, p. 1) and a "plea of guilty on June 24, 2003" (Doc. 47, p. 2). Plaintiff describes a "May 21, 2003" ticket for driving on a revoked license (Case No. 2003-TR-1995) and "another ticket for reckless driving on June 24, 2003" (Case No. 2003-TR-2517), with the first charge dismissed pursuant to a guilty plea on the second charge (Doc. 41, p. 1). Plaintiff contends that the June 24, 2003 reckless driving conviction was the basis for Brian's license revocation at the time of the March 2007 accident.

Brian Woods pled guilty to a DUI on November 13, 2002 (*see* Doc. 31-3, p. 14, also Bates-stamped as "ML 00049"). The chronology surrounding that DUI conviction is significant.

On October 8, 2001, Brian was arrested for DUI and his license was summarily <u>suspended</u>.[3] He pled guilty to DUI on November 13, 2002, resulting in his license being <u>revoked</u> on December 21, 2002 (*see* Doc. 31-4, pp. 9-10; ML 00073-00074; and Doc. 31-6, "Exhibit C"). Records from the Jersey County (Illinois) Clerk's Office indicate that two additional charges (failure to wear a seat belt and failure to reduce speed) were dismissed as part of the guilty plea on the DUI charge in November 2002 (*see* Doc. 31-3, pp. 14-18).

Two more charges followed in 2003. In May 2003, Brian Woods was ticketed for driving on a revoked license. In June 2003, Brian Woods was ticketed for reckless driving. On June 24, 2003, Brian appeared in court on *both* charges and – via a plea agreement – pled guilty to ***reckless driving***, in exchange for which the prosecution dismissed the driving-on-a-revoked-license charge (*see* Doc. 31-3, pp. 19-22; ML 00054-00057).

Based on the June 2003 reckless driving conviction, the revocation of Brian's driver's license was ***extended*** on July 3, 2003 (*see* Doc. 31-4, p. 10). The records show a "Type Action" code of "34" – "extension of revocation" (*id.*;

---

[3] According to the driving record provided by MLIC (Doc. 31-4, p. 9), the October 8, 2001 summary suspension left Brian *eligible* for license reinstatement on October 8, 2004.

Doc. 31-6, p. 2) – with a note that June 27, 2004 was the "Elig Date" (eligible for reinstatement date) on the extended revocation (Doc. 31-4, p. 10).

The parties fleetingly reference but do not fully explain any possible significance of the reinstatement eligibility dates. Plaintiff conclusorily declares that the DUI "summary suspension" expired more than five years before the March 2007 accident (Doc. 47, p. 1). Plaintiff refers to the Illinois Secretary of State's "Frequently Asked Questions" about statutory suspensions for DUI (*see* Doc. 31-3, p. 9) to bolster the assertion that the "summary suspension period for a first DUI is never longer than 12 months."[4] So Plaintiff posits that the DUI-related revocation was no longer effective as of the date of the accident.

Reaching the opposite conclusion, MLIC declares that the "Stop in Effect" column of the driving abstract *proves* that Brian's 2002 license revocation "was never reinstated" (Doc. 31, p. 4). To support this point, MLIC tenders an excerpt from an Illinois Continuing Legal Education (CLE) handbook explaining the codes used on Illinois driving abstracts (Doc. 31-6, p. 6).

The CLE excerpt explains that, on Illinois driver's records, the "YES" will become a "NO" when a suspension or revocation has elapsed or terminated. Brian's abstract shows "YES" in that column, buttressing MLIC's contention that

---

[4] Bearing note is the fact that the statutory summary *suspension* differs from a *revocation* which follows a guilty plea. It is unclear whether Plaintiff's counsel meant to equate the two terms in this portion of his brief or intended to discuss the typical length of a statutory suspension as opposed to a *revocation* following DUI conviction.

his *DUI revocation* still was in effect on the date he was killed.

But MLIC has supplied no affidavit, deposition testimony or sworn declaration to support the argument that Brian's <u>DUI-based</u> revocation remained effective in March 2007. Other than the CLE passage deciphering the abstract codes, MLIC offers only a one-paragraph handwritten note from its voluminous claims file, made by an unnamed MLIC employee reporting information she obtained over the telephone from an unidentified "hearing officer" at the Illinois Secretary of State's Office (Doc. 31-2, p. 19).

That August 23, 2007 entry suggests that Brian could have, but neglected to, pursue available avenues for reinstating his license following the DUI conviction: "He went to court on 11/13/02 and was convicted of the DUI which lead to the revocation of his license on 12/21/02. He never followed up with Drivers Services. He could have gone back to Drivers Services and requested a hearing, evaluation, risk assessment, etc. but never did. His license was suspended as of 10/8/01 and revoked since 12/21/02. At the time of the accident on 3/2/07, his license was suspended and revoked. Colleen S. 20-6209."

This is not a properly authenticated business record, it does not mention the 2003 reckless driving conviction, and it does not conclusively establish the basis for the revocation in place at the time of the 2007 accident.

Indeed, neither party has cited caselaw or offered an affidavit or

other sworn statement on this critical point: if an Illinois driver has his license revoked for a DUI conviction and later has that revocation *extended* based on something else (for instance, a reckless driving charge), does the extension "relate back" to the underlying DUI conviction, such that it can be said the license is still revoked *based on* the DUI?

MLIC's briefs assume that since Brian's license was revoked as of the date of the fatal crash, the revocation *must be* alcohol-related, rendering Brian's March 2007 conduct – driving with a blood alcohol level over .08 after already having previously been convicted of DUI – a felony.

Plaintiff proclaims that (a) Brian's DUI suspension "terminated on October 8, 2004" (Doc. 41, p. 1), and (b) the July 2003 extension of the revocation had no relation to the underlying DUI, such that "even if decedent was DUI on the date of his death, he was not committing a felony pursuant to Illinois law" (Doc. 25, p. 1).[5] Although this case is capable of being resolved via summary judgment, this Court lacks information needed to grant summary judgment in favor of either party.

---

[5] Plaintiff does *not* argue that a criminal <u>conviction</u> is needed to trigger the "commission of a felony" exclusion, perhaps cognizant of law in this Circuit unfavorable to that position. ***See, e.g., Steele v. Life Ins. Co. of North America*, 507 F.3d 593, 598 (7th Cir. 2007) (accidental death policy's felony exclusion applied to conduct "punishable as a felony under Illinois law," whether or not a conviction was obtained for that conduct).**

D.  Conclusion

The Court **DENIES AT THIS TIME** both pending motions for summary judgment (Docs. 25 and 30).  One question must be resolved before the Court can find either party entitled to judgment as a matter of law.

The Policy expressly excludes coverage if Brian was committing a felony when he died.  The undisputed toxicological report reveals that Brian's blood alcohol level was well above the .08% constituting the offense of DUI under Illinois law.  Because Brian had a prior DUI offense at that time, he was committing a felony IF his license still was revoked *based on* the DUI offense.

Counsel have not presented sufficient information for this Court to decide whether the revocation in place on the date of Brian's accident related back to the DUI or, instead, stemmed afresh from an intervening (and *non* alcohol-related) conviction – the July 2003 conviction for reckless driving. The Policy squarely covers or *excludes* coverage depending on the answer to that question.  So the Court must DENY the cross- motions for summary judgment.

IT IS SO ORDERED.

DATED this 18th day of November 2008.

                                            s/ Michael J. Reagan
                                            MICHAEL J. REAGAN
                                            United States District Judge